**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diversified Funding Group LLC, et al., | No. CV-17-01571-PHX-GMS |
| Appellants, | No. BK-11-21164-PHX-SHG |
| v. | Adv. No. 16-127-SHG |
| | Adv. No. 16-518-SHG |
| Hendon, et al., | **CONSOLIDATED with:** |
| Appellees. | No. CV-17-01572-PHX-GMS |
| | No. BK-11-21164-PHX-SHG |
| | Adv. No. 16-127-SHG |
| | Adv. No. 16-518-SHG |
| | **ORDER** |

Pending before the Court is Appellants' appeal of the Bankruptcy Court's decision to dismiss Appellees. (Docs. 1, 25). The Court affirms the decision.

## BACKGROUND

In 2010, Danny's Happy Valley, LLC ("DHV") filed for relief under Chapter 11 of the Bankruptcy Code, and nearly a year later, the principal of DHV, Daniel Lewis Hendon, also filed for personal relief under Chapter 11. These two petitions were joined in 2011. In response to a request of the DHV and Hendon debtors, the Bankruptcy Court initiated a plan that established a liquidating trust and empowered a trustee to administer the assets of the trust. On October 27, 2011, Appellant Diversified Funding Group, LLC,

("DFG"), a creditor in the Hendon Bankruptcy, sought a determination that its claim was nondischargeable. On August 13, 2014, the Bankruptcy Court entered a $23,916,359.14 nondischargeable judgment in favor of DFG.

Beginning in March 2016, DFG filed separate complaints against Hendon and other appellees in Arizona federal court ("Arizona complaint") and California state court ("California complaint"). In the complaints, DFG named Hendon and twenty-five other non-debtors and non-creditors as parties and sought relief in eighteen separate counts. In short summary of these complaints, Daniel Hendon and Heather Hendon held a controlling interest in fourteen separate carwashes. In August 2013, in a plea agreement that resolved pending criminal charges against him, Daniel Hendon divested himself from ownership of the carwash entities. The Verde Group, led by chairman Ernie Garcia, purchased three mortgage notes secured by the carwashes, which it sold to Pacwest three months later for a profit of over $2,000,000. The Verde Group then made two loans to Heather Hendon: for $1,000,000 in April 2015 and $600,000 in December 2015. Heather Hendon, the Verde Group, Ernie Garcia, and Pacwest have settled with DFG and are no longer parties to this suit.

DFG's complaints allege additional fraudulent activity among the remaining parties. Using proceeds from Verde's loans to her, Heather Hendon transferred $45,000 to Alan Meda and the Burch & Cracchiolo law firm to pay for Daniel Hendon's legal fees. DFG alleges that Meda, together with Heather Hendon's attorney Carolyn Johnson at Dickenson Wright, instructed Heather Hendon to create a sham bank account to conceal the funds from DFG and the Bankruptcy Court. DFG claims that Daniel Hendon retains ownership and control of the carwash entities through Pacwest. DFG claims that Daniel Hendon transferred $530,033 to Nell Hendon, his deceased mother, as a reimbursement for advances that she made on a loan, but no supporting documents for the transfer were produced. DFG claims that Kelly Carroll, Daniel Hendon's ex-wife, made three fraudulent transfers to Daniel Hendon from 2007 to 2010. DFG claims that Daniel Hendon fraudulently transferred at least $100,000 to Maria Barker, his girlfriend

in 2014. DFG claims that Daniel Hendon fraudulently transferred $1,200,000 to Gil Olguin and OSC capital in 2010. DFG claims that Daniel Hendon sold a Ferrari to his longtime friend Jay Swart for $80,000 to thwart collection in 2010. Lastly, DFG alleges that Daniel Hendon fraudulently transferred unspecified amounts of money at unspecified times to former employee Ernie Vasquez.

Eventually, both complaints were removed and/or transferred to the District of Arizona Bankruptcy Court. Because the defendants argued that the claims belonged exclusively to the Trustee and not DFG, DFG purchased the Trustee's rights to prosecute any potential claims. Concurrent with this purchase, DFG settled with twelve of the defendants, including Heather Hendon, Pacwest and the Verde Group. Many of the remaining parties filed motions to dismiss the complaints. With few exceptions, the Court granted the motions to dismiss without leave to amend.[1] DFG appeals.

## DISCUSSION

### I. Legal Standard

Under 29 U.S.C. § 158(a)(1), the Court has jurisdiction over appeals from "final judgments, orders, and decrees" of bankruptcy judges. The Court reviews a bankruptcy court's conclusions of law de novo, and its findings of fact under the clearly erroneous standard. *Greene v. Savage*, 583 F.3d 614, 618 (9th Cir.2009); Fed. R. Bankr.P. 8013. "Issues not 'specifically and distinctly raised and argued' in the opening brief need not be considered by the court." *See U.S. v. Montoya*, 45 F.3d 1286, 1300 (9th Cir.1995) (citing *Officers for Justice v. Civil Serv. Comm'n*, 979 F.2d 721, 726 (9th Cir. 1992)).

### II. Analysis

In the opening brief, Appellants argue that the Bankruptcy Court erred by (1) failing to consider the nondischargeability judgement, (2) dismissing the civil RICO claims with prejudice, and (3) dismissing the claims without leave to amend.

---

[1] See Bankruptcy Court decision, *Diversified Funding Group v. Hendon, et al,* No. 2:16-ap-00518, Doc. 39; (Doc. 25, App. Tab 1) ("Bankruptcy Order"), for detailed description of the procedural history.

### A. Consideration of nondischargeable debt

DFG provided a loan to Daniel Hendon and his entities in 2007. When Daniel Hendon failed to repay the loan, DFG sued Daniel Hendon and won a state suit for breach of contract and fraud for $17.7 million. Daniel Hendon subsequently filed for Chapter 11 relief. DFG then requested the Bankruptcy Court to hold that DFG's judgment against Hendon should be exempt from discharge pursuant to 11 U.S.C. § 523(a)(2), which "does not discharge an individual debtor from any debt . . . obtained . . . by false pretenses, a false representation, or actual fraud." DFG alleged that Daniel Hendon fraudulently made false representations to obtain the loan and extensions from DFG, and Daniel Hendon made a fraudulent omission concerning his intended use of loan proceeds, and that these false representations made his loan obligation to DFG nondischargeable. (Doc. 25, App. Tab 81 at 1–10). The court granted DFG's request because it showed that Hendon made a fraudulent omission regarding his use of loan proceeds, but it also ruled that DFG did not prove that Hendon fraudulently obtained the loan or extensions to the loan. (Doc. 25, App. Tab 81 at 23–24).

In roughly one page of its opening brief, Appellants summarily argue that the Bankruptcy Court's subsequent decision to dismiss parties from the present complaint is flawed because it failed to acknowledge the previous nondischargeable debt determination. Appellants briefly claim that the judgment "strongly supports" the "fraud and civil RICO claims." *Id.*

In the present decision, the Bankruptcy Court dismissed claims in DFG's complaints for various reasons. First, the Bankruptcy Court held that Arizona Complaint Count I, brought under 11 U.S.C. §§ 547–550, may not be commenced after two years from the entry of the order for relief. 11 U.S.C. § 546(a). The Bankruptcy Court determined that the 2011 petition date served as the entry of the order for relief, and it dismissed the claims because the complaints were filed in 2016, years after the 2013 statutory deadline. *Diversified Funding Group v. Hendon, et al,* No. 2:16-ap-00518, Doc. 39 at 11–14. A consideration of the 2014 nondischargeability decision would not save

- 4 -

these untimely claims.

Second, reference to the nondischargeability decision would not influence the Bankruptcy Court's decision to dismiss the claims in Arizona Complaint Count II and California Complaint Count I concerning state law fraudulent transfers. Defendants must receive fraudulent transfers to be liable under the appropriate state laws. A.R.S. § 44-1004; Cal. Civ. Code § 3439.04. The Bankruptcy Court dismissed claims against Appellees Johnson, Despain, and Nell Hendon because they never received any fraudulent transfers. *Diversified Funding Group v. Hendon, et al,* No. 2:16-ap-00518, Doc. 39 at 15, 16. The nondishargeability decision does not state that Johnson, Despain, or Nell Hendon ever received any fraudulent transfers. The Bankruptcy Court dismissed the claims against Carroll, Swart, and Olguin as time barred. *Diversified Funding Group v. Hendon, et al,* No. 2:16-ap-00518, Doc. 39at 15. It dismissed other claims because relief from the fraudulent transfers would require action against Pacwest, but Pacwest is no longer a party in the suit due to its settlement agreement with Appellants. *Diversified Funding Group v. Hendon, et al,* No. 2:16-ap-00518, Doc. 39 at 17. Appellants fail to describe how consideration of the nondischargeability decision would impact the analysis of any of these dismissals.

Third, the nondischargeability decision would not influence the Bankruptcy Court's decision to dismiss the claims in California Complaint Counts II, V, VII, and VIII concerning fraudulent concealment. California law hold parties accountable for fraudulent concealment only if they have a duty to disclose. *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (2015). The Bankruptcy Court dismissed these claims because none of the remaining defendants had financial relationships with DFG or were parties to the Pacwest sale or the Verde loans. *Diversified Funding Group v. Hendon, et al,* No. 2:16-ap-00518, Doc. 39 at 19. Appellants fail to describe how consideration of the nondischargeability decision would impact the Bankruptcy Court's analysis that the remaining defendants did not have a duty to disclose to DFG.

Lastly, the nondischargeability decision would not influence the Bankruptcy Court's decision to dismiss the civil RICO claims. A prima facie RICO claim requires the plaintiff to show that the conduct of an enterprise, through a pattern of racketeering activity (known as predicate acts), caused injury to the plaintiff's business or property. *United Brotherhood of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (citation omitted). The Bankruptcy Court dismissed the complaints against the non-settling defendants because of a failure to show the plausibility of repeated predicated acts by an enterprise. *Diversified Funding Group v. Hendon, et al*, No. 2:16-ap-00518, Doc. 39 at 37–38. The only alleged connection among the remaining defendants was that some of them received loan proceeds, sometimes in unspecified amounts and at unspecified times. Appellants fail to show how reference to the nondischargeability decision would impact that analysis.

In short, the Appellants have failed to demonstrate how the nondischargeability decision would change the Bankruptcy Court's dismissal of the fraud and civil RICO claims. The Bankruptcy Court did not commit legal error by not addressing the nondischargeability determination. If the Bankruptcy Court otherwise erred, DFG did not specifically and distinctly raise and argue these issues in the opening brief. *See U.S. v. Montoya*, 45 F.3d 1286, 1300 (9th Cir.1995) (citing *Officers for Justice v. Civil Serv. Comm'n*, 979 F.2d 721, 726 (9th Cir. 1992)).

**B.  Civil RICO Argument**

Appellants argue that the Bankruptcy Court committed legal error by individually considering appellees' alleged actions rather than collectively, and that the civil RICO portions of the complaint would have survived under the proper review. (Doc. 25 at 9–15).

The RICO statute generally makes it unlawful for any person to use or invest income from a pattern of racketeering activity. 18 U.S.C. § 1962(a). The statute includes civil remedies. 18 U.S.C. § 1964. To establish a civil RICO claim, a plaintiff must establish "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

activity (known as predicate acts) (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005). Concerning the first prong, RICO conduct is defined as "participat[ion] in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). Concerning the second prong, a RICO enterprise, if not a legal entity, is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). It further requires three features: a purpose; relationships among those associated with the enterprise; and sufficient longevity to pursue the purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009). Concerning the third prong, a pattern requires at least two predicate acts that have a relationship to each other and constitute a threat of continued racketeering activity. *H.J. Inc. V. Nw. Bell Tel. Co.*, 492 U.S. 229, 239–40 (1989). Concerning the fourth prong, the predicate acts must be defined in 18 U.S.C. § 1961(1), which include numerous indictable acts, including "fraud connected with a case under title 11." 18 U.S.C. § 1961(1)(D).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud," including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). "Rule 9(b)'s requirement that . . . the circumstances constituting fraud or mistake shall be stated with particularity applies to civil RICO fraud claims." *Id.* at 1065–66 (internal quotations omitted). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (citation and ellipsis omitted). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend

against the charge and not just deny that they have done anything wrong." *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotations omitted).

In short review, the amended complaint alleged the following separate conduct of non-settling parties to establish liability under RICO. Daniel Hendon's ledger includes a transfer of roughly $500,000 to his personal bank account to be used to repay his mother Nell Hendon as reimbursement for advances that she paid on a loan, but the Complaint does not include any supporting documentation for this payment to Nell, and the nondischargeability decision determined that she never received the money. Daniel Hendon transferred between $150,000 to $200,000 on three occasions between 2007 and 2010. Daniel Hendon transferred $100,000 to his girlfriend Maria Barker in 2014. Daniel Hendon transferred $1,200,000 to Gil Olguin in 2010. Daniel Hendon sold a Ferrari to Jay Swart in 2010 for $80,000. Heather Hendon transferred $45,000 to Alan Meda in 2015 for Daniel Hendon's legal fees. Daniel Hendon fraudulently transferred various payments to former employee Ernie Vasquez in unspecified amounts and at unspecified times.

The Bankruptcy Court dismissed the RICO complaints against the non-settling parties for various reasons. It generally dismissed the claims against Carroll and Vasquez because DFG acknowledged at oral argument that neither committed a RICO predicate act. *Diversified Funding Group v. Hendon, et al,* No. 2:16-ap-00518, Doc. 39 at 30. Concerning RICO conduct, the Bankruptcy Court determined that the claims against Nell Hendon, Barker, Swart, and Vasquez failed to allege that their conduct met the operation or management threshold. *Diversified Funding Group v. Hendon, et al,* No. 2:16-ap-00518, Doc. 39 at 31. Concerning RICO enterprises, the Bankruptcy Court determined that the complaint failed to show that appellees Daniel Hendon, Meda, Johnson, and Despain had any relationship to one another that could plausibly be construed as a RICO common interest, or that Nell Hendon, Barker, Swart, and Olguin had a connection to each other. *Diversified Funding Group v. Hendon, et al,* No. 2:16-ap-00518, Doc. 39 at 32.

Considering that Rule 9(b)'s particularity requirement applies to civil RICO fraud claims, *Edwards*, 356 F.3d at 1065–66, and that Rule 9(b) does not allow a complaint to lump multiple defendants together, but requires individual allegations supporting participation in the fraud, *Swartz*, 476 F.3d 756 at 764–65, the Bankruptcy Court did not commit legal error in dismissing appellants' civil RICO claims.

### C. Dismissal without leave to amend

A party may amend its pleading once as a matter of course. Fed. R. Civ. P. 15(a)(1). Thereafter, a party may amend its pleading only with written consent or the court's leave, and courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend "may be denied if the proposed amendment either lacks merit or would not serve any purpose because to grant it would be futile in saving the plaintiff's suit." *Universal Mortg. Co., Inc. v. Prudential Ins. Co.*, 799 F.2d 458, 459 (9th Cir. 1986) (citations omitted). The standard of review for denial of leave to amend is abuse of discretion. *Dan Caputo Co. v. Russian River County Sanitation District*, 749 F.2d 571, 574 (9th Cir. 1984).

DFG's argument is limited to a claim that this particular case has a complicated set of facts and that DFG should have been permitted to present new evidence obtained subsequent to their previously amended complaint. However, DFG did not present any of the alleged new evidence in its opening brief, nor did DFG make an affirmative argument as to how the Bankruptcy Court abused its discretion to deny leave to amend. Additionally, the Court is unaware that DFG ever requested leave to amend prior to the dismissal. Again, "[i]ssues not 'specifically and distinctly raised and argued' in the opening brief need not be considered by the court." *See U.S. v. Montoya*, 45 F.3d 1286, 1300 (9th Cir.1995) (citing *Officers for Justice v. Civil Serv. Comm'n*, 979 F.2d 721, 726 (9th Cir. 1992)). In sum, the Court is unaware of how DFG could have successfully amended its complaint when the Bankruptcy Court denied leave to amend for futility. Therefore, the Court affirms the Bankruptcy Court's decision to dismiss without leave to amend.

**IT IS THEREFORE ORDERED** that the Bankruptcy Court's Order Granting Motions to Dismiss is **AFFIRMED**.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to terminate this action and enter judgment accordingly.

Dated this 12th day of June, 2018.

_____
Honorable G. Murray Snow
United States District Judge